IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 16, 2014

## WILLIAM LANCE WALKER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 2013-CR-146     Robert Crigler, Judge**

—————

**No. M2014-01305-CCA-R3-PC - Filed December 17, 2014**

—————

A Marshall County jury convicted the Petitioner, William Lance Walker, of the sale of .5 grams or more of cocaine and the delivery of .5 grams or more of cocaine. The Petitioner appealed, and this Court affirmed the judgments of the trial court. *State v. William Lance Walker*, No. M2012-01319-CCA-R3-CD, 2013 WL 1799988, at *6 (Tenn. Crim. App., at Nashville, April 29, 2013), *no Tenn. R. App. P. 11 filed*. The Petitioner subsequently filed a petition for post-conviction relief in which he alleged that his trial counsel was ineffective on multiple grounds. The post-conviction court dismissed the petition after a hearing. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James Ronald Tucker, Jr., Shelbyville, Tennessee, for the appellant, William Lance Walker.

Herbert H. Slatery, III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Robert Carter, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Trial**

1

This case arises from the Defendant's sale of cocaine to a confidential informant in a Walmart parking lot in Lewisburg, Tennessee. On direct appeal, this Court summarized the underlying facts of the case as follows:

> Kristoffer Peacock, the confidential informant, testified for the State. According to Mr. Peacock, after he was caught with several ounces of marijuana at his home, he became a "cooperating individual" for the 17th Judicial Drug Task Force at some point prior to the transaction involving [the Petitioner]. Mr. Peacock had never met [the Petitioner] prior to November 14, 2008, but knew about [the Petitioner] through [the Petitioner's] ex-girlfriend.

> On the date of the incident, Mr. Peacock called [the Petitioner] and asked for an "eight ball" of cocaine. [The Petitioner] quoted a price of "$220 or 225, something like that." At the request of authorities, Mr. Peacock initiated contact with [the Petitioner] a second time to confirm the deal and try to negotiate the price. This telephone call was recorded and played for the jury.

> Mr. Peacock was searched by authorities, fitted with a transmitter and recorder, and given $225 in preparation for the controlled drug buy. [The Petitioner] met Mr. Peacock in the parking lot of the Walmart in Lewisburg, Tennessee. [The Petitioner] got into the car with Mr. Peacock and handed him an "eight ball" of cocaine in a small bag which was tied in a knot. Mr. Peacock gave [the Petitioner] $225. Mr. Peacock left the location of the buy and drove back to the meeting point. He informed officers that the cocaine was located in the cup holder of his car. It was retrieved by police and tested positively for 3.3 grams of cocaine.

> During cross-examination, Mr. Peacock testified that he owned a janitorial business. Prior to the incident at issue herein, [the Petitioner] had asked Mr. Peacock for a job. Mr. Peacock admitted that he was "going to potentially give [the Petitioner] a job." Counsel for [the Petitioner] asked if the "Drug Task Force [knew he] was going to potentially give [the Petitioner] a job." Mr. Peacock answered, "When [the Petitioner] got out of jail, he never called me."

> Special Agent Billy Osterman, the "tech man" on the 17th Judicial Drug Task Force for the controlled buy at issue herein was responsible for preserving the evidence of the telephone call prior to the transaction and supplying Mr. Peacock with the money for the transaction. Special Agent

Osterman also fitted Mr. Peacock with the transmitter and recorder to monitor the transaction. Special Agent Osterman monitored Mr. Peacock's audio transmission throughout the transaction and was in visual contact with Mr. Peacock until he approached the Walmart parking lot. At that point in time, another agent, Special Agent Shane George, actually picked up visual contact of Mr. Peacock and witnessed the transaction with [the Petitioner]. The purchase was videotaped by Special Agent George. Deputy Sheriff Tim Miller of the Bedford County Sheriff's Department also maintained visual contact with Mr. Peacock during the transaction.

*Walker*, 2013 WL 1799988, at *1-2. The jury convicted the Petitioner of the sale of .5 grams or more of cocaine and the delivery of .5 grams or more of cocaine. The trial court merged the two offenses and sentenced the Petitioner to twelve years in incarceration, to be served consecutively with his sentence in another case, for a total effective sentence of forty-seven years of confinement. *Walker*, 2013 WL 1799988, at *2. The Petitioner filed a motion for new trial, and, at a hearing on the motion, the trial court modified the sentence and imposed an effective sentence of thirty-six years. *Id.* at *2.

### B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, claiming that he had received the ineffective assistance of counsel on multiple grounds, including that his trial counsel, ("Counsel"), failed to raise objections to the State's line of questioning, which he contends was leading, elicited speculative testimony, and was without proper foundation.[1] The post-conviction court held an evidentiary hearing, where the parties presented the following evidence:

The Petitioner testified that he was incarcerated at the time of the hearing for parole violations related to felony drug convictions. He stated that he was represented by Counsel at one of his two jury trials on those drug charges. He testified that the trial court originally imposed a twelve-year sentence to be served consecutively to a sentence in another case but that the trial court modified the sentence at the motion for new trial hearing and imposed a twenty-year sentence to be served concurrently to the sentence in the other case.

The Petitioner stated that in his petition for post-conviction relief he was raising the issue of ineffective assistance of counsel because Counsel "didn't meet the standards on representing [the Petitioner] and providing [him] with an adequate defense." The Petitioner said that the State asked witnesses leading questions, for which Counsel raised no objection.

---

[1]The Petitioner's additional allegations are not being maintained on appeal.

The Petitioner recalled that a State's witness testified to the Petitioner's criminal history and that Counsel failed to request a curative instruction be given to the jury. The Petitioner also stated that some of the witnesses' testimony was "guess work" and that Counsel failed to object to that speculative testimony. The Petitioner testified that there were no objections throughout his trial and that "none of the State's evidence was ever put [] under attack or challenged" by Counsel.

The Petitioner testified that he felt that the confidential informant was not a reliable witness and had induced the Petitioner to commit the crime, but Counsel failed to bring that up in front of the jury. The Petitioner recalled that the presentence report introduced at the sentencing hearing was incomplete according to the person who prepared it and that Counsel failed to object to the presentence report being introduced into evidence.

On cross-examination, the Petitioner testified that the State asked leading questions of all the police officers who testified. The Petitioner stated that the prosecutor "testified for [the witnesses]." The Petitioner stated the confidential informant testified about the Petitioner being in jail, which the Petitioner said prejudiced him, and then Counsel failed to ask the trial court for a curative instruction. The Petitioner agreed that he asked Counsel to move for a mistrial, which Counsel did, and the trial court denied the motion.

The Petitioner recalled that the trial court might have offered to give a curative instruction for the comment about the Petitioner having been in jail. The Petitioner testified that he thought Counsel declined to have the instruction given to the jury but that he could not say for certain. The Petitioner testified that he asked Counsel to file a motion to recuse, because the trial judge had presided over the Petitioner's other criminal matters. The Petitioner reiterated that Counsel failed to object to the presentence report after the witness who testified about it said she had not spoken with the Petitioner and that the report was inaccurate.

Counsel testified that he was an Assistant Public Defender for six and a half years and that he represented the Petitioner at trial. At that time, Counsel had worked on approximately thirty trials. Counsel agreed that the Petitioner asked him to file a motion to recuse, but Counsel stated that he "had no grounds to request recusal." Counsel stated that he reviewed the case for potential grounds for recusal but found none.

Counsel was shown the trial transcript and agreed that several of the State's questions could "possibly be [] leading," but he said that the questions were "clarifying" a prior question. Counsel stated that some of the leading questions were "procedural" and "did not have any bearing on the facts of the case." Counsel stated that he did not object to those questions because he was "concerned" that "the jury would get irritated that [he] was

4

dragging out the trial on a point of just procedures."

Counsel testified that he did not object when the State questioned the confidential informant about his drug transactions with the Petitioner because it was part of his strategy to show the jury that the confidential informant was a drug dealer himself. Counsel wanted to show the jury that the confidential informant had pressured the Petitioner into purchasing crack cocaine from him. Counsel testified that he did not recall any specific testimony that was speculative. Counsel reiterated that he did not object to some of the State's leading questions about Drug Task Force investigation procedures because "the jury may not [] like defense counsel jumping up and objecting to leading questions over and over, when [the question is] just the Drug Task Force saying, we place the drugs into a bag and tape it."

Counsel stated that the mention of the Petitioner's past drug use came out through a recording played for the jury about the Petitioner purchasing marijuana from the confidential informant. Counsel reiterated that this was part of his strategy to show the jury that the confidential informant was the drug dealer and the Petitioner "was just helping him out. . . ." Counsel recalled that he discussed this strategy with the Petitioner, who did not object to it. Counsel stated that to shed light on the confidential informant's lack of credibility, he asked the confidential informant about "working off" his crimes in exchange for his testimony against the Petitioner and used the same in his closing argument to highlight the confidential informant's involvement.

Counsel stated that he brought up the issue of the confidential informant being the Petitioner's potential employer, after the Petitioner "got out of jail[,]" in order to establish an entrapment defense. As such, Counsel did not request a curative instruction on the comment about the Petitioner being in jail because he wanted the evidence that the confidential informant was "able to hold a job over [the Petitioner's] head" to be introduced in support of the defense theory that the Petitioner was pressured into committing the crime. Counsel also decided that the jury could easily have assumed that the Petitioner's incarceration was in connection with his current charges and not his prior convictions. Counsel was "concerned" that, if he asked for a curative instruction on the comment about the Petitioner being in jail, then it would "suggest heavier weight" or make the comment stand out in the jurors' minds. Counsel said:

> I mean, of course, [the jury] could think that [the Petitioner] was in jail for something else. However, there is an effect that if you tell somebody not to think about something, that's what pops in their mind. . . . . So, I did not want to have the judge go back and tell the jury.

> Because at the time when [the confidential informant] made that

5

statement, I tried to keep going in order to try and minimize it and just move on – and keep him back on the questions. So, I did not want to come back 20 minutes later and have [] the judge tell the jury, this prior statement was prejudicial, so you don't need to think about it.

And then, therefore, they walk back into the jury room thinking, well, why – why would he tell us not to think about that jail? There must be something really bad in his past.

Counsel stated that the Petitioner's trial lasted one day, and that at the conclusion Counsel felt that he had done everything he could. He recalled thinking that the State had a strong case and he felt that the Petitioner would be convicted.

On cross-examination, Counsel agreed that the State asked leading questions, but that he did not want to stop the line of questioning because it was leading directly to what Counsel wanted to show the jury about the confidential informant being a drug dealer and working the Petitioner's case so he could get a plea deal. Counsel stated that objecting to questions about Drug Task Force procedure would have been a waste of time, because those facts would have been testified to anyway, and thus, objecting to them would not have benefitted the Petitioner's case. Counsel agreed that he requested a mistrial based on the confidential informant's comment about the Petitioner having been in jail, but did not want a curative instruction given to the jury because it would not have been helpful to the Petitioner's case. Counsel agreed that not requesting the curative instruction was a "tactical decision" and that the Petitioner understood the decision. Counsel stated that the Petitioner later disagreed with the decision after being convicted. As for the presentence report, Counsel did not recall any testimony about inaccuracies.

On redirect-examination, Counsel stated that, even had he objected to the confidential informant's comment about the Petitioner having been in jail, the outcome of the trial would not have been different.

Based upon this testimony, the post-conviction court found that the Petitioner had not met his burden of showing prejudice or deficient performance by Counsel. The post-conviction court accredited Counsel's testimony as to the reasons he chose not to object to the State's leading questions and found that the same was "sound trial practice[.]" The post-conviction court further noted that objecting to leading questions that "don't hurt you" could "alien[ate] a jury." The post-conviction court found that the leading questions asked had not affected the outcome of the trial. On the subject of the comment about the Petitioner being in jail, the post-conviction court found that Counsel was not ineffective because he moved for a mistrial on that basis, and that his failure to request a curative instruction was a "sound

tactical decision," which did not provide a basis for post-conviction relief. The post-conviction court noted that not requesting a curative instruction was "common" practice where an attorney felt that the instruction would draw more attention to the damaging information.

The post-conviction court went on to find that there was no legal basis for recusal in this case, and, thus, such a motion would have been frivolous and Counsel was not ineffective for failing to file a motion for the same. Finally, the post-conviction court found that Counsel had raised the entrapment defense. For these reasons, the post-conviction court denied the petition. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel's failure to object to the State's leading questions resulted in the Petitioner receiving the ineffective assistance of counsel. The Petitioner states that Counsel's testimony at the post-conviction hearing supports his assertion that the State asked leading questions and Counsel did not object. This, the Petitioner contends, resulted in a failure "to subject the State's case to 'the crucible of meaningful adversarial testing.'" The State responds that the Petitioner has failed to show that he received deficient legal representation or was prejudiced in any way by Counsel's decisions regarding objections. The State further responds that the Petitioner has failed to show that the outcome of his trial would have been different had Counsel made different tactical decisions. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United*

*States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In its order denying the Petitioner relief on this issue, the post-conviction court credited Counsel's testimony about his trial strategy and decisions. The post-conviction court found that Counsel made strategic and tactical decisions not to object to the State's questions regarding the procedure followed by the Drug Task Force and that this was common trial practice to prevent alienating the jury. The post-conviction court further found that failing to object to the questions did not prejudice the Petitioner. The post-conviction court noted that the State's questions to the confidential informant damaged the informant's credibility, and, thus, Counsel had no reason to object, as attacking a confidential informant's credibility is also common trial practice. Throughout its order the post-conviction court noted that Counsel made tactical decisions when he did not object to the State's questions for a variety of reasons including: Counsel did not want to irritate the jury; Counsel did not want to draw the jury's attention to negative facts that hurt the Petitioner; and Counsel wanted the jury to hear certain facts elicited by the State's questions.

We conclude that the evidence does not preponderate against the post-conviction court's findings. Counsel was not deficient in his representation of the Petitioner when he did not object to certain leading questions, as he testified that it was a matter of strategy to limit the jury's irritation and expose any issue of credibility for the State's witness. Many of the State's leading questions were about the procedures used by the drug task force investigators and Counsel stated that, had he raised an objection to the leading nature of the questions, the facts would have come into evidence another way. Thus, as a matter of strategy, it was Counsel's decision not to object and slow down the testimony, as such might have irritated the jury. Counsel's decision not to object to the State's questioning of the confidential informant was a two-fold strategy: Counsel did not want to draw the jury's

attention in a negative way to the fact that the Petitioner had been in jail, and Counsel wanted to shed negative light on the confidential informant by allowing testimony that he was a drug dealer. Counsel's strategy was to maximize the informant's role as a drug dealer and attempt to portray the Petitioner's role as secondary. It is well-settled that the fact that a particular strategy failed or even hurt the defense does not alone support a claim of ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). We conclude that his strategy not to object at certain points during testimony was not indicative of deficient performance but of a multi-pronged defense strategy for the Petitioner's trial.

Counsel further testified that he filed a motion for mistrial based on the confidential informant's comment about the Petitioner being in jail, and that motion was denied. It was again part of Counsel's strategy not to draw the jury's attention to that comment in a negative way, and Counsel testified that he did not request a curative instruction for that comment as a result. We reiterate that matters of trial strategy or tactical decisions do not provide the basis for allegations of ineffective assistance of counsel in post-conviction petitions. *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

The Petitioner has not shown by clear and convincing evidence that Counsel's failure to object to the State's questions of witnesses at trial constituted representation that falls below the standard of reasonableness. Accordingly, we do not conclude that Counsel's representation fell below an objective standard of reasonableness. Thus, the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

10